UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | CRIMINAL ACTION NO. |
| v. | § | |
| | § | 3:10-CR-349-B (01) |
| | § | |
| ARLINGTON HANEY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER OF DISBARMENT

On April 21, 2011, the Court filed its Notice of Intention to Disbar Steven Ryan Lafuente, former counsel for Defendant Arlington Haney (doc. 21). The Court directed Lafuente to show cause before April 29, 2011 why, based on his conduct while representing Haney, he should not be so disciplined and admonished him that failure to show cause would result in his disbarment. Lafuente failed to respond to the show cause order. Accordingly, for the reasons set forth below, the Court hereby **DISBARS** Steven Ryan Lafuente from practice in the Northern District of Texas. Lafuente **MAY NOT** seek readmission to this District for a period of two years from the date of this Order, and then only upon the condition that he reimburse his former client Haney the $17,000 in legal fees Haney paid Lafuente.

### I.

### BACKGROUND

Lafuente's misconduct during this case is documented in previous filings of the Court. On December 30, 2010, the Court entered a Pretrial Order, scheduling a pretrial conference for March

4, 2011, and setting trial for March 7, 2011. During the week immediately preceding the scheduled pretrial conference, the Court made several attempts to reach Lafuente. The Court first called the phone number registered by Lafuente in the Northern District's electronic filing system ("ECF system"). That number was disconnected. The Court then contacted counsel for the Government and asked if he had any means of contacting Lafuente. Counsel for the Government indicated that he had no other contact information for Lafuente, that he too had been unable to reach Lafuente, and that the parties had not exchanged discovery, even though the trial was set to begin in less than one week. The Court next called the phone number Lafuente registered with the State Bar of Texas, leaving a message asking Lafuente to contact the Court as soon as possible regarding the impending pretrial conference. Lafuente did not respond to this message.

On the morning of Wednesday, March 2nd, the Court was finally able to locate Lafuente by obtaining his cell phone number from a representative at his former firm. Once contacted, Lafuente manifested surprise that the trial was still scheduled for March 7th and indicated that he would call counsel for the Government to "get things worked out." The Court did not hear back from him that afternoon. With no word back from Lafuente by Thursday, just one day before the scheduled pretrial conference, the Court attempted to contact him via his cell phone, this time receiving a message that his voicemail box was full. The Court then called counsel for the Government, who indicated that Lafuente had left a voice mail message on Wednesday, but that Government's counsel had been subsequently unable to reach Lafuente, instead receiving the same electronic message that Lafuente's mailbox was full.

Lafuente did not call the Court at any time leading up to the scheduled pretrial conference on Friday, March 4th. Although the Court rescheduled the conference prior to the time it was to

commence, the Court was unable to contact Lafuente to notify him of the scheduling change. On Monday, March 7th, Lafuente contacted the Court to inquire whether the trial was going to proceed. He maintained that he had not returned the Court's calls because "a server was down," keeping him from receiving any voice messages. Lafuente related that his client was on "stand-by" if needed for trial, but that Lafuente himself was scheduled to conduct a jury selection in state court that same morning. The Court notified Lafuente that the trial would not proceed that week.

Based on Lafuente's disturbing failure to maintain contact with the Court and Government's counsel prior to trial, a hearing was scheduled for March 15th to determine whether Lafuente was similarly falling short of meeting his ethical obligations to his client. Both Lafuente and Defendant Haney as well as Government's counsel appeared at the hearing. Lafuente proffered conflicting accounts as to the reasons for his lack of communication with the Court. First, he maintained that a server had crashed at his offices, which made his current email account inaccessible. Later, Lafuente attributed his communication problems to the Clerk of Court's reliance on outdated contact information, which Lafuente conceded he had failed to update when he changed his email address.

Government's counsel described similar communication problems with Lafuente in the weeks preceding the scheduled trial. He stated that prior to the March 15th hearing, he had only been able to communicate with Lafuente on two occasions, both instances occurring in the week immediately preceding trial. Lafuente did not dispute Government's counsel's statement that Lafuente did not approach the Government regarding the exchange of discovery until the day of the scheduled pretrial conference, March 4th.

So far as his contact with Defendant Haney, Lafuente conceded "difficulty" communicating

with Haney for which he admittedly had "no excuses." He said he and Haney primarily communicated by "text messaging." When Lafuente described their interactions as "once or twice a week," Haney, became visibly upset and vigorously shook his head back and forth indicating strong disagreement with Lafuente's characterization of their interactions.

Given Lafuente's failure to communicate with the Court, the Government and, most importantly, his client, the Court questioned Haney about his fee arrangement with Lafuente. From its inquiry of Haney as well as from information gleaned in subsequent hearings, the Court determined that Haney had paid Lafuente approximately seventeen thousand dollars in cash, borrowed from his parents, for Lafuente's services. Haney told the Court that he wanted to hire a different attorney. The Court directed Lafuente to reimburse Haney the full seventeen thousand dollar fee. Three subsequent hearings were required to determine Lafuente's financial ability to reimburse Haney.[1]

At a hearing held on the March 16th to assess Lafuente's financial ability to repay Haney, Lafuente announced to the Court for the first time that he was to be suspended from the practice of law by the State Bar of Texas, his suspension to begin on March 21st. He told the Court that, with the State Bar proceedings pending, Haney's case "fell through the cracks." This prompted further inquiry from the Court about how long Lafuente had been aware of his impending State Bar suspension.[2] Through this inquiry and questioning at separate hearings, the Court determined that

---

[1] In total, the Court conducted four hearings concerning Lafuente's conduct. These hearings occurred on March 15th, March 16th, March 22nd, and April 14th.

[2] Lafuente's suspension by the State Bar of Texas is the subject of a separate reciprocal disciplinary proceeding, which recently resulted in his suspension from the Northern District of Texas. *See In re Steven Ryan Lafuente, Esq.*, No. 3:11-mc-048-P. That suspension is distinct and wholly separate from the discipline imposed herein, as this discipline stems solely from Lafuente's conduct in this case.

Lafuente first became aware of an investigation by the State Bar into his mismanagement of an IOLTA account in a civil case in the Summer of 2010. A disciplinary hearing was held on either January 5th or 10th of 2011, and his suspension was announced on January 26th, set to commence on March 21, 2011. Not only had Lafuente failed to disclose his suspension to the Court until the March 16th hearing, a mere five days before the suspension was set to begin, he never notified Haney about the grievance, investigation, or suspension until the day of the March 16th hearing. This, despite being retained by Haney on December 20, 2010 and collecting seventeen thousand dollars in fees from him. In fact, Lafuente actively solicited payment from Haney on at least three separate occasions in late 2010 and early 2011.[3]

While the only "record" of payment[4] provided by Lafuente detailed $5,000 and $4,000 cash payments on December 20, 2010 and January 8, 2011, respectively (doc. 15), Lafuente and Haney agreed that other non-recorded cash payments were also received after Lafuente's computer server crashed in late January 2011. In short, not only was Lafuente failing to properly communicate with his client in the weeks leading up to trial, knowing all the while that a grievance had been filed against him and that he was under investigation by the State Bar, he also failed to disclose this information to his client and instead sought and received payments from him.

During the course of the hearings, Lafuente maintained that he was financially incapable of

---

[3] Even after the Court directed Lafuente to reimburse Haney and Haney sought new counsel, Haney told the Court that Lafuente offered to repay him the full $17,000 if Haney chose to use the attorney recommended by Lafuente.

[4] At the March 15th hearing, the Court directed Lafuente to file either a record of the payments he had received from Haney or a signed agreement between he and Haney as to how much was owed. While the parties eventually agreed that Haney paid $17,000 in cash payments, the "record" provided by Lafuente only accounted for a little over half of the total amount of payments.

repaying Haney the $17,000 he admittedly owed him. The Court convened the April 14th hearing, in part, to ascertain if this was true. While the records produced by Lafuente were scarce (and even missing several important pages and months from his bank statements), the Court nevertheless determined that Lafuente was currently unable to pay, and thus a finding of civil contempt was not appropriate at that time. After that hearing, the Court issued its Notice of Intention to Disbar (doc. 21) based on all of the foregoing facts. The Court admonished Lafuente that his conduct in this case warranted disbarment and directed him to show cause by April 29th why the Court should not so punish him. Lafuente never responded to the Notice, and the Court assumes, therefore, that he is unopposed to the discipline it seeks to impose.

## II.

## LEGAL STANDARD

Federal courts have the inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *Chambers v. NASCO, Inc.*, 502 U.S. 32, 43-45 (1991). Towards that end, federal courts are empowered to sanction bad faith conduct occurring during the litigation. *Elliott v. Tilton*, 64 F.3d 215, 216 (5th Cir. 1995). With respect to disciplinary sanctions against a member of a district's bar in particular, "[c]ourts enjoy broad discretion to determine who may practice before them and to regulate the[ir] conduct." *In re Warren*, 321 F. App'x 369, 372 (5th Cir. 2009) (quoting *U.S. v. Nolen*, 472 F.3d 362, 371 (5th Cir. 2006)). Under Criminal Rule LCrR 57.8(b) of the Local Rules of the United States District Court for the Northern District of Texas, "[a] presiding judge, after giving opportunity to show cause to the contrary, may take any disciplinary action against a member of the bar for . . . conduct unbecoming a member of the bar[,] failure to comply with any rule or order of this court[, or] unethical behavior." LCrR 57.8(b). Behavior is

"unethical" when it "violates the Texas Disciplinary Rules of Professional Conduct." LCrR 57.8(e). Because the sanction of disbarment is so severe and in fact quasi-criminal in nature, "[a] federal court may disbar an attorney only upon presentation of clear and convincing evidence sufficient to support the finding of one or more violations warranting this extreme sanction." *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992).

While a federal district court has broad discretion in sanctioning attorneys practicing before it, it must also insure that the sanction it imposes is the least restrictive form of discipline necessary—if "a lesser sanction will have the desired effect, the court must try the less restrictive measure first." *Natural Gas Pipeline of Am. v. Energy Gathering Inc.*, 86 F.3d 464, 467 (5th Cir. 1996) (citations omitted). In other words, the sanction must "be tailored to fit the particular wrong." *Topalian v. Ehrman*, 3 F.3d 931, 936 n.5 (5th Cir. 1993) (extending the analytical principles for determining sanctions under Rule 11 "across-the-board" to all of the district court's sanction powers). Appropriate factors to consider in determining the amount of a sanction award include: (1) the precise conduct being punished; (2) the precise expenses caused by the violation; (3) the reasonableness of the fees imposed; and (4) the least severe sanction adequate to achieve the purpose of the rule relied upon to impose the sanction." *Id.* at 936.

## III.

## ANALYSIS

Based upon the evidence in the record and the Court's own credibility determinations, the Court finds by clear and convincing evidence that Lafuente violated LCrR 57.8's prohibition against unethical behavior when he engaged in the following violations of the Texas Disciplinary Rules of Professional Conduct:

**(1) Rule 1.01**—Rule 1.01(b) of the Texas Disciplinary Rules of Professional Conduct provides, "In representing a client, a lawyer shall not (1) neglect a matter entrusted to the lawyer; or (2) frequently fail to carry out completely the obligations that the lawyer owes to a client or clients." Lafuente violated this provision by neglecting and consciously disregarding the duties and responsibilities he owed Haney, namely failing to communicate with his client, failing to adequately communicate with the Court or counsel for the Government, failing to attempt to exchange discovery with the Government until less than a week before trial (and only at the Court's prodding), failing to disclose his impending suspension, and failing to appear at the scheduled March 4th pretrial conference;

**(2) Rule 1.03**—Rule 1.03(a) of the Texas Disciplinary Rules of Professional Conduct provides, "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Lafuente violated this provision by failing to keep his client reasonably informed, as Haney testified that he had limited, if any, contact with Lafuente from the time he was retained until the proceedings that are the subject of this Order; and

**(3) Rule 8.04**—Rule 8.04(a)(3) of the Texas Disciplinary Rules of Professional Conduct provides, "A lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Lafuente violated this provision by not representing to the Court and his client that he was the object of a disciplinary order with a six-month actual suspension to begin in March 2011 (and thus deceived the Court and his client concerning his ability to continue on the case).

In addition to violating his ethical obligations under the Texas Disciplinary Rules of Professional Conduct, the Court also determines that the totality of Lafuente's actions in this case to violate LCrR 57.8(b)'s prohibition against conduct unbecoming a member of the bar.

Lafuente has not disputed the facts that form the basis of the Court' determination. While the Court has given him an opportunity to object to its findings that he took $17,000 from Haney, that he rarely communicated with his client, that he did little to no work on his client's case, and that he failed to notify his client of the grievance proceedings, Lafuente has failed to object to or dispute these findings. *See In re Warren*, 321 F. App'x 369, 372-73 (5th Cir. 2009) (stating that a district court properly found attorney had waived his ability to challenge the court's order of disbarment because he failed to object when given the opportunity to do so).

Disbarment and a prohibition against readmission for two years along with the precondition of repaying his former client the $17,000 fee are the best-suited and least severe sanctions appropriate under the circumstances. Lafuente solicited a large fee from a client charged with a serious felony for whom he performed negligible work and then failed to timely disclose to the client the State Bar's grievance, investigation or suspension. On more than one occasion he encouraged Haney to deliver large sums of cash to his law office, all the while letting his client's case "fall through the cracks." Haney, still under indictment and desiring retained counsel, is faced with the prospect of finding new counsel without the $17,000 in funds he borrowed from his parents to pay Lafuente. Lafuente's fee.

Lafuente's undisputed disregard for his professional obligations under the circumstances here must be met with a strong reaction from the Court. A suspension alone would not properly deter this type of conduct or punish Lafuente for the prejudice he has caused Haney. Lafuente concedes that he owes Haney the $17,000. The two-year disbarment with the reimbursement precondition serve as both an appropriate punishment for his egregious conduct and an adequate incentive for him to repay the sum owed. This discipline additionally serves to deter Lafuente and others from similar conduct.

**IV.**

**CONCLUSION**

Lafuente's misconduct in this case warrants his disbarment from the Northern District of Texas, a prohibition against his reapplication to practice before this District until he has repaid Haney the $17,000 he owes him, and a further limitation that may reapply no sooner than two years from the date of this Order.

Accordingly, the Court hereby **ORDERS** that Lafuente is disbarred from membership of the bar of this court and the Clerk of Court is **ORDERED** to remove his name from the rolls of the members of the bar of this Court.

The Court further **ORDERS** that Lafuente must repay Haney the $17,000 in fees that he received for representing Haney in this case before reapplying for admission to the Northern District, and even then may only do so after **June 3, 2013**.

Additionally, before reapplying for admission, Lafuente must also submit proof of his repayment of Haney to both this Court and to the Clerk of Court.

Finally, the Court **ORDERS** that the Clerk of Court mail copies of this Order and the April 21, 2011 Notice of Intention to Disbar (doc. 21), along with an appropriate cover letter, to the regional Chief Disciplinary Counsel for the State Bar of Texas:

> State Bar of Texas
> ATTN: Susan Farris
> 14651 Dallas Parkway, Ste. 925
> Dallas, Texas 75254.

**SO ORDERED.**

**DATED June 3, 2011**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE